

# Missouri Court of Appeals

## Southern District

In Division

| | |
|---|---|
| IN THE INTEREST OF J.W.C., | ) |
| | ) |
| MISSOURI DEPARTMENT OF SOCIAL SERVICES, CHILDREN'S DIVISION, | ) ) |
| | ) |
| Respondent, | ) No. SD38058 |
| | ) |
| v. | ) **Filed: December 6, 2023** |
| | ) |
| J.W.C., | ) |
| | ) |
| Appellant. | ) |

APPEAL FROM THE CIRCUIT COURT OF MCDONALD COUNTY

Honorable John R. LePage, Judge

## **AFFIRMED**

Father appeals from the judgment terminating his parental rights to Child. Father raises four points on appeal.[1] In points 1 and 4, Father claims the trial court abused its discretion in overruling his objection and admitting Father's drug tests by taking judicial notice of the underlying protective custody case (point 1) and under the business records affidavit exception (point 4). In point 2, Father claims the trial court abused its discretion in overruling his objection and admitting into evidence a letter denying his request for a home study under the Interstate Compact for the Placement of Children ("ICPC") by taking judicial notice of the

---

[1] Parental rights of Child's biological mother ("Mother") were also terminated but she is not a party to this appeal.

underlying protective custody case.  In point 3, Father claims the trial court erred in terminating his parental rights on the statutory ground of abandonment because it was against the weight of the evidence.  Finding no merit in Father's points, we affirm.

## Background

Father lives in Arkansas and is the biological father of Child.  After Father and Mother divorced in 2016, Child lived with Mother in Missouri.  In April 2021, Child was placed in protective custody with the Missouri Children's Division ("Children's Division") after methamphetamine and drug paraphernalia were discovered in Mother's vehicle.[2]  In August 2022, Children's Division filed a petition to terminate Mother and Father's parental rights based on abandonment, abuse and neglect, a failure to rectify the conditions that led to the court assuming jurisdiction over Child, and parental unfitness.[3]

Initially, Children's Division worked with Father in an attempt to reunify him with Child and provided him with a social service plan to achieve that goal.  The social service plan required Father to complete a substance use assessment, engage in individual therapy, take parenting classes, submit to random drug tests, obtain and maintain safe and appropriate housing, resolve all legal issues, provide financial and in-kind support, attend all visitations, and attend all court hearings and case team meetings.  Children's Division offered Father services in Missouri and also "provided [Father] the phone number for Children's Division or the equivalent in Arkansas" that could provide him a list of services available in Arkansas.

---

[2] Child, then six years old, had extensive knowledge of drugs and drug paraphernalia and disclosed multiple instances of domestic violence in the home.  The petition for protective custody alleged Mother had reported there was domestic violence in the relationship, that the family had a history with Children's Division in Missouri and with the Division of Children and Family Services of Arkansas ("DCFSA"), and that Children's Division was continuing to search for contact information for Father.  Children's Division filed an amended petition indicating it had located Father, that Father had a criminal history in Arkansas, and that an expedited request had been sent to DCFSA to comply with ICPC.  Because of concerns about Father's criminal history, domestic violence, substance use, and history with Children's Division and DCFSA, Father was not given custody of Child.
[3] At trial, the trial court took judicial notice of Child's underlying protective custody case, Case No. 21MC-JU00051, without objection.

Despite services being offered to Father, he failed to complete the tasks on his social service plan. In fact, Father waited 16 months *after* Child entered protective custody to engage in individual therapy or to obtain a substance use assessment This was after the case goal had been changed to termination and the petition for termination had been filed.[4]

While Father did submit to drug testing, he failed every drug test taken and never participated in any drug treatment. Father also failed to show up at his last scheduled drug test, which was just a month before trial. He was given an extra week to take the drug test but still failed to appear for it. Father admitted all his drug test results were positive but denied drug use, claiming that his prescription medications caused the positive results. Additionally, Father's request for an ICPC home study in Arkansas was denied due to a positive drug test.

In addition to drug testing, Father was asked to complete a parenting education class, which he failed to do. While Father provided some in-kind support by sending a few presents to Child, he failed to provide any other financial support, despite having a job. During Christmas 2021, Father provided a gift card to Child. The Children's Division caseworker ("Caseworker") was aware of only three times in the past two years where Father provided presents.

Child has had no contact with Father since July 2021. At that time, phone conversations between Father and Child were stopped based on the recommendation of Child's therapist. Child told therapist about Father having been physically abusive to his brother and to Mother, that he was fearful of Father, and Child did not want to see Father. Therapist did not foresee any time in the near future that Child could have therapeutic contact with Father due to Child's fear and to Child's mental health issues. Caseworker also believed it would be dangerous to return Child to Father because Father continued to test positive for methamphetamine and because of Child's fear of him.

---

[4] Father eventually attended nine therapy sessions, but these occurred after the case goal changed to termination.

The trial court terminated Father's parental rights to Child on the statutory grounds of: (1) abandonment; (2) abuse and neglect; (3) failure to rectify potentially harmful conditions; and (4) parental unfitness. *See* § 211.447.5(1)-(3) and (5).[5] It also found that termination of Father's parental rights was in Child's best interest. Additional evidence is set out in the analysis as necessary.

## Standard of Review

An order terminating parental rights will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. ***In re Q.A.H.***, 426 S.W.3d 7, 12 (Mo. banc 2014). The trial court's order is presumed valid and it is an appellant's burden to demonstrate error. ***Interest of N.D.B.***, 623 S.W.3d 223, 228 (Mo. App. S.D. 2021). The judgment will be reversed only if we are left with a firm belief that it is wrong. ***J.A.R. v. D.G.R.***, 426 S.W.3d 624, 626 (Mo. banc 2014).

We defer to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations. ***In Interest of A.C.G.***, 499 S.W.3d 340, 345 (Mo. App. W.D. 2016). The trial court is free to believe all, some, or none of the evidence offered to prove a contested fact. ***In Interest of J.P.B.***, 509 S.W.3d 84, 90 (Mo. banc 2017). "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." ***J.A.R.***, 426 S.W.3d at 626.

In order to terminate parental rights, the trial court must engage in a two-step analysis. ***In re J.M.T.***, 386 S.W.3d 152, 158 (Mo. App. S.D. 2012). First, it must find by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. ***Id.*** If at least one statutory ground for termination exists, the trial court then moves to the second step, which is determining whether termination of parental rights is in the child's best interest. ***Id.***

---

[5] All statutory references are to RSMo Cum. Supp. (2021).

**Evidentiary Challenges (Points 1, 2, and 4)[6]**

Points 1 and 4 challenge the trial court's overruling of Father's "objection" and admission of Father's drug tests by taking judicial notice of the protective custody case (point 1) in which the drug tests were originally filed and based on the business records exception (point 4).  Point 2 challenges the trial court's overruling of his "objection" to the admission of the ICPC letter denying Father's request for a home study based on a positive drug test by taking judicial notice of the protective custody case.

At trial, the trial court admitted the ICPC letter which stated Father's ICPC home study was being denied due to a positive drug test result.  Father objected to the admission of the letter on the grounds of hearsay and lack of foundation.  The trial court overruled the objections because the letter was part of the underlying protective custody case of which it had taken judicial notice.  The trial court also admitted three exhibits (Exhibits 3-5) containing business record affidavits as well as the results of Father's drug results from three different testing agencies.  Father objected to these exhibits on the grounds of hearsay, lack of foundation, and inability to cross-examine, but acknowledged, at least during his objections to one of the exhibits, that he "agree[d] that the record should come in as a business record[.]"[7]  The trial court overruled these objections.

**Standard of Review**

"The trial court enjoys 'considerable discretion' in deciding whether to admit or exclude evidence, and its evidentiary rulings are reviewed for abuse of discretion." *Matter of Stiles*, 662 S.W.3d 322, 331 (Mo. App. S.D. 2023) (quoting *Shallow v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018)).  "An abuse of discretion occurs when the court's decision is clearly against

---

[6] In terminating Father's parental rights on the statutory grounds of abandonment, the trial court did not mention Father's substance use, positive drug tests, or the ICPC letter, but did mention Father's failure to remain drug free in its best interest analysis.  The ICPC denial was mentioned only in the trial court's findings on the statutory ground of parental unfitness.

[7] Father made this comment as to the drug results in Exhibit 3.

5

the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." ***A.C.G.***, 499 S.W.3d at 345 (quoting ***In re S.F.M.D.***, 447 S.W.3d 758, 767 (Mo. App. W.D. 2014)). "If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the court abused its discretion." ***Reed v. Kansas City Missouri Sch. Dist.***, 504 S.W.3d 235, 240 (Mo. App. W.D. 2016). Moreover, even if we find an error, we will not reverse unless that error "materially affected the merits of the action." ***Id.*** (quoting ***Cox v. Kansas City Chiefs Football Club, Inc.***, 473 S.W.3d 107, 114 (Mo. banc 2015)). To find reversible error, the appellant must demonstrate he or she was prejudiced by the admission of that evidence. ***Interest of D.S.H. v. Greene Cnty. Juvenile Officer***, 562 S.W.3d 366, 372 (Mo. App. S.D. 2018).

### The Drug Test Results (Points 1 and 4)

Father's arguments that the trial court abused its discretion in admitting the drug tests by taking judicial notice of Child's protective custody case (point 1) and by admitting them under the business records exception (point 4) fail for several reasons. First, there is no indication in the record that the drug test results were admitted by the trial court by taking judicial notice. Rather, they were admitted as business records under the business record exception to the hearsay rule. Because the trial court did *not* admit the drug tests by taking judicial notice of Child's protective custody case, there can be no error in admitting the drug test on that basis. For that reason alone, point 1 fails.

As to Father's complaint that the trial court abused its discretion in admitting the drug test results under the business record exception (point 4), it too fails. Father made three objections to the drug test results—hearsay, lack of foundation, and inability to cross-examine. But Father's point fails to identify which specific objection the trial court overruled. To the extent Father's point is a challenge to the trial court overruling each objection, Father's point is multifarious since each objection requires a separate and distinct analysis (e.g., whether a trial court abuses its discretion in overruling a hearsay objection requires a different analysis than

6

whether a trial court abuses its discretion in overruling an objection to a lack of foundation). "Points on appeal that raise multiple, independent claims of error are multifarious." *Dieckmann v. JH Constr. 2, LLC*, 619 S.W.3d 513, 522 (Mo. App. E.D. 2021). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review."[8] *Id.* (quoting *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 n.6 (Mo. banc 2018)).

Even if Father had properly preserved his claims for our review, his argument would still fail because he does not demonstrate he was prejudiced by the admission of the drug test results. Father testified that all of his drug tests were positive. Likewise, Caseworker testified twice, without objection, that Father "continues to test positive for methamphetamine[.]" "Cumulative evidence is additional evidence reiterating the same point." *Interest of T.D.S.*, 643 S.W.3d 510, 522 (Mo. App. E.D. 2021). Improperly admitted evidence merely cumulative to evidence admitted without objection does not result in prejudice. *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 134 (Mo. banc 2007). Even if the lab results had been excluded, the trial court had before it testimony reiterating the same point—that Father failed all his drug tests. Father does not demonstrate prejudice. Points 1 and 4 are denied.

### The ICPC Letter

Likewise, Father fails to demonstrate he was prejudiced by the admission of the ICPC letter. The contents of the letter reiterated what both Caseworker and Father testified to—that

---

[8] In any event, Father failed to preserve his "lack of foundation" objection. At trial, Father gave no explanation as to why there was a lack of foundation. He merely stated there was a lack of foundation with no further elaboration. General objections to a lack of foundation are insufficient to preserve an alleged error because they fail to direct the trial court's attention to the specific foundational element considered deficient. *Jerry Bennett Masonry, Inc. v. Crossland Constr. Co., Inc.*, 171 S.W.3d 81, 99 (Mo. App. S.D.2005). By failing to object in a manner that would direct the trial court to a specific foundational defect, Father has failed to preserve that objection for our review. All rule references are to Missouri Court Rules (2023).

We also note that Father himself acknowledged the documents should be admitted as a business record at trial. We will not allow a party to complain on appeal about an alleged error in which he joined, acquiesced or invited by his conduct at trial. *Interest of J.R.S.*, 667 S.W.3d 213, 217 (Mo. App. S.D. 2023). Accordingly, Father has waived any claim of error on the ground of the business record exception, at least as to the admission of the drug test results in Exhibit 3.

Father's ICPC placement request was denied. This testimony was elicited without objection. Caseworker testified she had received a letter stating Father's ICPC request was denied. Similarly, Father testified "the ICPC had to be stopped because of the drug screen or the first one, the failure of the first one." Thus, the contents of the letter were cumulative to other evidence.[9] Father fails to demonstrate he was prejudiced by the admission of the evidence and, therefore, cannot demonstrate reversible error. Point 2 is denied.

## Statutory Ground of Abandonment (Point 3)

In point 3, Father argues the trial court's termination of Father's parental rights based on the statutory ground of abandonment was against the weight of the evidence. Father does not challenge the other statutory grounds for termination that the trial court found (abuse and neglect, failure to rectify, and parental unfitness). Only one statutory termination ground is needed to affirm the judgment. *Interest of N.D.B.*, 623 S.W.3d 223, 228 (Mo. App. S.D. 2021). Because Father does not challenge the other statutory grounds, we need not decide point 3.

## Conclusion

The judgment terminating Father's parental rights is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

---

[9] Moreover, the trial court's judgment did not specifically mention the ICPC letter, although it did mention that Father's ICPC request was denied. This Court presumes on review that inadmissible evidence is not prejudicial unless it is clear the trial court relied on that evidence in arriving at its findings of fact and conclusions of law. *D.S.H.*, 562 S.W.3d at 373. Since the letter was not specifically mentioned, we presume the trial court based its findings on the testimony that the ICPC request was denied.